DECISION
Relator, Timothy N. Cale, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation or, in the alternative, to issue an order that complies with the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that respondent-commission had abused its discretion in its decision.
No objections have been filed to the decision of the magistrate.
Finding no error or other defect of law on the face of the decision of the magistrate, pursuant to Civ.R. 53, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Writ of mandamus denied.
PETREE and BROWN, JJ., concur.
 IN MANDAMUS
Relator, Timothy N. Cale, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that grants compensation, or, in the alternative, that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
1. In February 1985, Timothy N. Cale ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for amputation of the left index finger and laceration of the left thumb. In December 1985, claimant sustained another injury, and his claim was allowed for strained right hip and acute lumbosacral strain.
2. In December 1998, claimant filed a PTD application, supported by an opinion from Dayle Snyder, M.D., who stated that it "certainly does appear that Tim Cale will never be able to return to gainful employment." Dr. Snyder noted that the "Workers' Compensation doctors" appeared to have difficulty assessing claimant's permanent disability because "he already has cerebral palsy, and has had that all his life."
3. In March 1999, claimant was examined on behalf of the commission by Kapala Rao, M.D., who opined that claimant could sit for no more than three hours per work day, stand for no more than three hours, and walk for no more than three hours. He limited lifting to no more than ten pounds and prohibited activities such as stooping and crouching.
4. A vocational assessment was provided by Deborah Nolte, Ph.D., who noted inter alia that claimant's age and education were positive factors. However, she recognized that claimant's cerebral palsy would limit his employability.
5. Following hearing, the commission mailed an order denying PTD:
 Claimant is a 47 year old male with a high school education and a relevant work experience that includes work as a press operator, heavy equipment operator, truck driver, lawn care and truck driver/delivery person. Evidence in file indicates that claimant has extensive experience as an independent small business owner. More specifically he has had a weed eater business, cleaning service, catering service for private parties (cooking hog and cattle) and he has a truck delivery person earning salary and commission with his brother's truck firm. * * *
 Claimant was examined by Dr. Kalapala Rao, M.D. a Physical Medicine Specialist on the Commission's behalf. In his report dated 03/05/1999 Dr. Rao states that claimant retains the ability to perform sedentary work.
 An employability assessment report was done on the Commission's behalf by Dr. Deborah Nolte, Ph.D., on 05/02/1999. Dr. Nolte found claimant's age is a positive employment factor, as is claimant's high school education and his steady work history from 1978 to 1996. Dr. Nolte also opined that claimant has adequate academic skills and aptitudes for entry level sedentary employment.
 Claimant previously filed for PTD benefits on 07/31/1997. That application was denied by Staff Hearing Officer order of 01/21/1998. * * * Claimant's file belies an individual with a demonstrated ability to learn and adapt to new jobs and this, despite a congenital condition of cerebral palsy (a condition which claimant states does not affect his ability to work). As an example, the Staff Hearing Officer order of 01/21/1998 noted that when claimant was injured in 1988 while hunting, he was able to continue working as a heavy equipment operator. However, he went on to become a truck driver. The litany of small businesses claimant has performed in the past (as noted above) demonstrates multiple abilities such as organizational, intellectual and interpersonal that would serve claimant well in seeking re-employment. The fact that these various enterprises were diverse in kind demonstrates an ability to learn and adapt to new environments. The prior Staff Hearing Officer order reads in pertinent part: "He [claimant] testified he was able to learn how to operate heavy equipment in one day. He later learned how to operate a truck and become a truck driver/delivery person. He has opened several businesses. Claimant has demonstrated his ability to interact with other people. He belongs to several organizations that provide for charities. He has run several fund raising events. Claimant's abilities are clearly assets in his seeking and maintaining employment." Claimant's testimony today corroborated all aspects of this quoted passage. The only deviation in claimant's status during the 17 month interval between his two IC applications is that he now indicates that he has essentially liquidated his interest in a cattle farm he ran with his brother. This does not, however, alter the fact that claimant has acquired extensive business acumen and vocational skills through his eclectic work history.
 The claimant presented himself at hearing as an amiable, intelligent and interactive individual. His answers to questions were articulate and well-reasoned. The Staff Hearing Officer concludes that if this individual remains unemployed, it is not due to lack of ability or the presence of a disability. Not even claimant's unrelated cerebral palsy prevented him from working consistently in a variety of settings over an 18 year (1978 1996) period which is evidence of yet another significant, and impressive, characteristic which would help claimant in his quest for employment perseverance. (As noted earlier, claimant concedes that his palsy has never prevented him from holding employment.) The Staff Hearing Officer, therefore, does not find it to be a factor.)
 The Staff Hearing Officer concludes that this man has multiple marketable skills and the residual functional ability as well as the youth (still) to put them to good use. In short, claimant is not found to be permanently and totally disabled. * * *
Conclusions of Law:
Claimant contends that the commission had a legal duty to award him PTD compensation and that the commission's order constitutes an abuse of discretion. First, claimant asks the court to overrule or clarify the decision in State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360,362, in which the Ohio Supreme Court stated that "part-time work constitutes sustained remunerative employment."
Second, claimant asks the court to define further the term "sustained remunerative employment," providing clearer guidelines for determining the level of "sedentary" medical capacity that will support an award of PTD. Third, claimant forwards this proposition of law: "A claimant who begins work with a reduced residual functional capacity to engage in work, must have the nonmedical factors analyzed at this reduced level and not at a level common to all other workers."
In regard to the fundamental definition of PTD, it is well established that a person who can perform "sustained remunerative employment" is not permanently and totally disabled. Although the commission has broad discretion in determining PTD, the courts have rendered numerous decisions clarifying the boundaries of the commission's discretion. E.g., State ex rel. Morris v. Indus. Comm. (1984), 14 Ohio St.3d 38. For example, the commission may find a claimant capable of sedentary work where the claimant can perform some, but not all, jobs encompassed within the definition of sedentary work. State ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414, 418. It is sufficient if the claimant can perform some type of work. Id. See, also, State ex rel. Roy v. Indus. Comm. (1998), 83 Ohio St.3d 199, 203.
In addition, the Ohio Supreme Court stated unequivocally in State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360, 362, that the term "sustained remunerative employment" includes part-time work:
 Most of claimant's propositions can be disposed of summarily.
 As to proposition of law two, part-time work constitutes sustained remunerative employment. See State ex rel. Wireman v. Indus Comm. (1990), 49 Ohio St.3d 286 * * *.
Although the Supreme Court has not defined the term "part-time work" in Toth, the courts have provided guidance in unreported opinions. In State ex rel. DeSalvo v. May Co. (June 29, 1999), Franklin App. No. 98AP-986, unreported (Memorandum Decision), affirmed (2000), 88 Ohio St.3d 231, the court in essence concluded that, where a claimant is capable of working more than four hours per day by combining his abilities to sit, stand and walk, the commission may find the worker capable of sustained remunerative employment.
On the other hand, functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. See State ex rel. Libecap v. Indus Comm. (Sept. 5, 1996), Franklin App. 96AP-29, affirmed (1998),83 Ohio St.3d 178. In Libecap, the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying on a medical opinion stating inter alia that claimant could sit for no more than thirty minutes at a time. In mandamus, the court of appeals found that the commission abused its discretion in determining that claimant had the medical capacity to perform sedentary work because sedentary work requires sitting most of the time, whereas the commission relied on a medical report finding claimant incapable of sitting more than thirty minutes at one time. Therefore, regardless of the fact that the physician placed claimant generally in the "sedentary" category, the specific limitations imposed were so restrictive as to preclude sustained remunerative employment.
From decisions such as Toth, DeSalvo, and Libecap, the magistrate extracts general guidelines. It appears that the commission may find a claimant medically unable to perform sustained remunerative work where there are no jobs reasonably likely to accommodate his combination of medical restrictions, and/or where the claimant can work less than four hours per day. However, where the capacities to sit, stand and walk can be combined to provide, for example, a workday of five or six hours, the claimant may be found to be medically capable of sustained remunerative employment.
Claimant asserts that the holding in Toth is questionable and should be overruled. However, until and unless the Supreme Court overrules or modifies its holding in Toth, this court will continue to apply it. See State ex rel. Sinnott v. Ironton Iron, Inc. (Nov. 27, 2001), Franklin App. No. 01AP-187, unreported; State ex rel. Underwood v. Indus. Comm. (Dec. 29, 2000), Franklin. App. No. 00AP-412, unreported.
Therefore, the magistrate considers the commission's order under existing law. The relevant inquiry in a PTD determination is claimant's ability to do any sustained remunerative employment, including part-time work. E.g., State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693; Toth. In determining whether a claimant is able to perform sustained remunerative employment, the commission must consider both medical impairment and nonmedical/vocation factors. Stephenson.
The commission is prohibited from relying on medical conditions not allowed in the claim. State ex rel. Whetstone v. Bonded Oil Co. (1995),73 Ohio St.3d 205. An award of compensation may not be based, even in part, on a nonallowed condition. State ex rel. Erico Products, Inc. v. Indus. Comm. (1994), 70 Ohio St.3d 661. However, the existence of a disabling, nonallowed condition does not preclude an award of compensation. The question is whether the allowed condition, independent of other conditions claimant may have, precludes sustained remunerative employment. State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452; State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78. The Supreme Court has made clear that the commission "cannot compensate claimants unless their disability results exclusively from an allowed condition." State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158, 166 (emphasis in original).
A corollary of that principle is that the commission may not rely on a medical opinion that is based even in part on a nonallowed condition. State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264. While a doctor may refer to nonallowed conditions in his report, he or she may not rely on a nonallowed condition in rendering the opinion on impairment or disability. Quarto Mining, supra.
In the present action, the parties do not dispute that claimant suffers from cerebral palsy ("CP"), a condition he has had all his life. Claimant appears to assert in his third proposition that the commission abused its discretion in failing to consider his CP as one of the Stephenson non-medical factors.
First, it is clear that claimant's CP is a medical factor. The condition affects his medical/functional capacity to perform work activities. In short, it is not a Stephenson factor but is a nonallowed medical condition. See, generally, Whetstone, supra; State ex rel. Coleman v. West End Auto Body (Sept. 28, 1998) Franklin App. No. 98AP-63, unreported (Magistrate's Decision), adopted (Mar. 18, 1999), unreported (Memorandum Decision). As such, it cannot be considered in awarding PTD determination.
Nonetheless, the magistrate agrees that there are circumstances, albeit rare, where a disabling nonallowed condition may have relevance to a PTD determination. For example, the magistrate poses a situation in which a person was born with an eye condition that prevented him from performing a substantial range of jobs due to severely limited vision. However, he entered vocational training and learned to operate a special switchboard. After twenty years as a telephone operator, an industrial accident leaves him with impaired hearing. The hearing impairment, independent of the vision impairment, would not prevent the claimant from performing a range of jobs. However, the hearing impairment from the industrial injury effectively knocks this claimant out of the work force.
The fundamental purpose of PTD compensation is to compensate workers who cannot perform sustained remunerative employment due to industrial injury. Where a person entered the labor market by overcoming a substantial disability, that person can be forced from the labor market by a mild loss of capacity that, independently, would not cause PTD. For example, where a person entered the workforce with a significant nonindustrial disability, and where he learned specialized work that permitted him to be employed, an industrial accident could render him permanently and totally disabled if it prevents him from performing the specialized work to which he was limited. Such a claimant should receive PTD compensation because the industrial injury has forced him from the labor market.
However, in the present action, the magistrate concludes that, regardless of whether this theory may be valid, the findings of fact in the present action would not support its application. Here, claimant entered the work force with an existing medical condition that can cause mild or profound impairment. Based on evidence in the record, including claimant's testimony, the commission found that claimant's CP had not prevented him from performing a wide array of jobs. The findings of fact, which are supported by "some evidence," do not support that this claimant entered a specialized or restricted labor market due to the CP. The evidence does not establish conclusively that the industrial injury deprived claimant of the few jobs he could perform, or that the industrial injury ousted him from the restricted labor market to which his CP had confined him. Thus, even if the court were to adopt a theory like the one discussed above, the evidence would not require a writ.
Next, the magistrate considers whether the order otherwise constitutes an abuse of discretion. The commission found that the allowed conditions would permit claimant to perform sedentary work, based on the opinion of an examining physician who found claimant able to sit for up to three hours and able to stand or walk for up to three hours. Based on that report, the commission could conclude that claimant was able to work for up to five or six hours per day in a job with a sit/stand option. Under Toth and DeSalvo, the commission could find claimant medically capable of sustained remunerative employment on a part-time basis.
In regard to the nonmedical factors, the commission was within its discretion to find a high-school education to be an advantage, and to find that basic academic skills are a foundation for learning an entry-level job. State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92; State ex rel. West v. Indus. Comm. (1996),74 Ohio St.3d 354. Further, the commission was within its discretion to find that claimant's work history showed positive characteristics. A work history is subject to interpretation, and a factor that does not appear to be a strong asset may nonetheless be viewed as showing positive characteristics. See State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139. In the subject order, the commission identified the valuable characteristics it inferred from particular jobs, and it explained its reasoning sufficiently. For example, the commission found that claimant's entrepreneurial employment showed business acumen, and that his history of learning diverse jobs showed an ability to learn and be trained. The magistrate finds no abuse of discretion in these findings.
In regard to claimant's age, the commission found that his relative youth was a positive factor, which was within its discretion. See Ellis, supra. Considering the medical and nonmedical factors in combination, the commission was within its discretion to conclude that the industrial injury did not preclude claimant from performing sustained remunerative employment.
In sum, the claimant has not met his burden of proving an abuse of discretion, and the magistrate recommends that the court deny the requested writ of mandamus.